If you may please the court, my name is Craig Dorsey. I represent the Samish Indian tribe in this case, and I'd like to reserve three minutes if I could. This case involves the Samish tribe's 24-year-long struggle to gain federal recognition, which began in January of 1972, two years before the decision in U.S. v. Washington was even issued upholding treaty fishing rights. And that struggle ended in November 1996, where the Samish tribe finally vindicated its right to federal recognition over delay, obstruction, and opposition of the United States and certain Indian tribes. In a separate proceeding in 1974 in U.S. v. Washington, the Samish tribe sought to obtain treaty status for the exercise of fishing rights. The United States, the state of Washington, and several of the other tribes opposed Samish. At that time, on the grounds that the Samish tribe was not recognized, and that federal recognition was necessary for treaty status and the exercise of treaty fishing rights. Throughout... I object on the grounds that there was no organized tribal structure, which is different words from federally recognized. That's correct. I was talking about the grounds for opposition. Now, Judge Bolt in U.S. v. Washington, his primary basis for denying Samish's intervention was on the grounds that the tribe was not federally recognized. The Ninth Circuit overturned that on the basis that the lower court had used the wrong legal standard. Right. So what I was saying... The correct legal standard is that you didn't have treaty rights. Pardon me. Your client didn't have treaty rights because you were not an organized tribal structure. Because they did not show that the tribe had maintained an organized tribal structure. That's correct. Now, there are two primary ways that you can show treaty status in U.S. v. Washington. Most of the tribes showed and demonstrated treaty status because of the fact that they were federally recognized. Every federally recognized tribe that intervened in U.S. v. Washington was granted treaty status. The one example cited by the opposition, the Chehalis case, is a tribe that walked away from the treaty grounds and so didn't have treaty status. So clearly that was relevant. And if you look at the findings of the district court in U.S. v. Washington, nowhere in there did the court look and determine whether those federally recognized tribes had maintained an organized tribal structure because federal recognition, by definition, met that standard. Let me ask you one thing I didn't understand. What was... At the time Judge Bolt handed down his decision, and then on the decision on intervention in this case, what did it mean to be federally recognized? I mean, was there some roster or some proclamation someplace in Congress or... Well... In the Bureau of Union Affairs, it said the United States government recognizes this tribe. Yes, there was no roster. During the time this case was going on and Samish tried to intervene, we showed in our record that the United States only conducted recognition determinations on an ad hoc basis. It had started to do it as a result of passage of the Indian Reorganization Act in 1934. The most common method of federal recognition is when a tribe enters into a treaty with the United States. But in the late 60s, and we showed this and this was discussed in the recognition proceeding, the federal government started struggling with the fact that they didn't have this roster like you're talking about. And they developed a list in 1966 of all the tribes that the United States had dealings with. And the original draft of that list, which was drafted by a lower BIA clerk in the Department of Interior, listed the Samish Indian Nation on the list. And the cover memo, which we had in our exhibit, says, this is a list of the tribes that the United States recognizes. Then Samish was left off the second draft of the list. So when the United States started using this list to say these are the tribes we recognize and Samish isn't on it, and that's the time in 1972 when Samish applied for recognition. Now the reaction, and again this is in our exhibits, the United States was, they reacted in panic saying we don't have a policy for recognition. We don't know how we recognize people. They were referring to the 1942 Cohen edition on federal Indian law. So what they did is they froze Samish's petition for recognition until they could figure out what their policy was. They were unsure whether they even had the authority to recognize tribes outside the statute. When they froze the Samish's petition, meanwhile, what was going on with Judge Bolt? In Judge Bolt, the Samish tribe during that same time had filed to intervene and claim treaty status. And Judge Bolt's original case was up on appeal before the Ninth Circuit. There was a lot of confusion going on at the time, and the Ninth Circuit came down with the maintenance of an organized tribal structure standard in the middle of 1975. At the same time, for example, the magistrate had already ruled against Samish, but Samish was trying to meet the standards. There were two groups of tribes who got treaty status in Bolt I, Washington I, recognized tribes, and then there were two or three unrecognized tribes. And those tribes, if you look at the factual findings, they had a tribal constitution and they had a role that had been a membership role that had been approved. So Samish only submitted, I think, seven exhibits in front of the magistrate to meet those minimal standards. When it got to Judge Bolt, by the time there was the full hearing for Samish in the fall of 1975. What was the magistrate judge's recommendation? I can't remember. He ruled that Samish was not entitled to treaty status also. It had two findings, and it was the same thing, it hadn't shown the necessary cohesiveness of structure, and then the federal recognition was a standard that the United States was advocating at that time. So by the time Samish tribe came up for a full hearing, de novo hearing before Judge Bolt, the maintenance of an organized tribal structure standard existed. At the same time, though, Judge Bolt had already ruled that he had no authority to decide the issue of federal recognition. That was beyond the jurisdiction of the federal courts. It was within the exclusive purview of the executive branch. So both these proceedings are going on at the same time. The important point here is that throughout the... Did anybody ask him to stay his proceedings until the federal recognition proceedings were completed? There is some evidence that that occurred at the Ninth Circuit level. There's also a memo that we submitted in support of our motion. It's October 3, 1974. And in that memo, it's an internal memo within the Interior Department where they said, well, you know, maybe we should make a decision on recognition for Samish. But if we do that, then the tribe is going to appeal to, I think they used the term, the hearings and appeals boys, which is the Interior Board of Indian Appeals, and that will delay the decision in U.S. v. Washington. That's the only indication of a stay. It would have been nice if there had been a stay because recognition was clearly relevant, but there was none. And there was no decision, so Samish was stuck in a limbo state at that point with regard to its recognition. At the same time, throughout the proceedings in Washington, too, the United States is making repeated representations, as we pointed out, to the magistrate during final argument, I mean a special master, to Judge Boldt in the briefs, to this court, the Ninth Circuit, when the Samish tribe appealed, and even to the U.S. Supreme Court that the Samish tribe, and I'm using this in general, or there are five tribes, was pursuing recognition in a separate proceeding. That's even an admission by the United States that that shouldn't have taken place, couldn't take place in Washington, and that they were going to keep the court informed, and if Samish got recognition, and this is in the special master, then maybe the court should revisit or give the tribe reconsideration of its treaty rights. So throughout that proceeding, that representation is being made. There's a Ninth Circuit case, which I didn't cite in my brief, but I found while I was conducting further research, it's U.S. v. Sparks, it's 653 F. 2nd, 1128, where it's a similar situation where someone led the United States to believe that they had reached an agreement or had made repeated assurances to the United States that they would enter into a settlement agreement and abide by that agreement and then backed out after the time frame had passed. And the Ninth Circuit granted Rule 60B relief in that circumstance. Yes. I have a problem with the procedure here. See if you can straighten me out. In the case which you call Washington 1, there were several tribes seeking recognition of their treaty rights or establishment of their treaty rights. That's correct. And obviously there might be overlapping claims, and one of the things that the judge had to do was to straighten out those overlapping claims and make allocation, correct? Well, there were separate phases of the proceeding. First was to grant the treaty rights, and then it was to determine the usual and custom. Yes. So there were all in court people who were making claims against each other which the court could straighten out and apportion, correct? There were claims how much they were disputed. I am not aware because Samish was not a party to that case. In the recognition proceeding, that was a proceeding in which Samish applied on his own behalf for recognition, correct? That's correct, yes. Were any of the other parties who were in the litigation regarding treaty rights necessary parties to the recognition proceeding before the Board of Immigration? Pardon me. Yes. The Board of Indian Affairs. The Ninth Circuit ruled in that case that Tulalip tribe attempted to intervene in the recognition proceeding, and they were denied because recognition involved different issues, actually multiple. Yes. So what happens is that in a proceeding which is in effect ex parte toward the other tribes, Samish gets recognition, and you wish this Court to say that that recognition can be used to afford fishing treaty rights in the other litigation. No. The answer is no to that. Because the Ninth Circuit has said in that same proceeding that recognition for Samish will not self-execute treaty rights for the tribe.  And would have a marginal influence. What it is, it's a relevant, extraordinary circumstance that should give the Samish tribe the opportunity to go back to Washington I, and fully and independently, and those are the terms that the Ninth Circuit used in the 1993 Samish recognition case, litigate the issue where all of the tribes that are parties to U.S. v. Washington will have the opportunity to present all of their evidence and to controvert anything that Samish may submit to the Court. Now, remember, in the Washington I case, for example, you saw in the briefs that the Lummi and Swinomish tribes both got a ruling that they were the successor to the Samish tribe. But Samish wasn't a party in that proceeding either. And, in fact, you've got sort of conflicting rulings. You have two tribes claiming to be the sole successor because that wasn't a disputed issue. Why wasn't Samish a party? They were denied intervention. So they weren't able to participate. Later on, the upper Skagit tribe was found to be the successor in interest to the Nwaha tribe, which, in the recognition proceeding, the judge, administrative law judge, found to also be part of the Samish tribe. Now, this is where you find that these issues were raised and litigated in the recognition proceeding, though, because when Samish was successful in front of Administrative Law Judge Torbett, who ruled, for example, that Samish was a successor in interest to the Nwaha tribe, the United States thereafter, unilaterally, ex parte, by improper means, removed that finding from the administrative judge's recommended decision. He also removed the finding that the Samish tribe had not assimilated or merged into the Swinomish and Lummi tribes, and the Samish tribe had to appeal. Even though they were successful in gaining recognition, the Department of Interior removed those critical findings. That's what Judge Zille referred to them as, and reinstated those. And the findings and the judgment of the court issued in the recognition proceeding was that the Samish tribe was a successor to the Nwaha tribe and to itself. And that they had not merged or assimilated into those two other tribes. Yeah, there was another basis on which the district court considered in denying relief, which was finality concerns and the impact they would have on settled expectations and allocations that were in place. Well, and I can address that. The problem is, and on both the grounds that the district court denied relief to Samish, the problem is that the district court engaged in a categorical denial. If you look at the decision law in Rule 60B, like in the Claprock case, it talks about Rule 60B striking a fine balance between the need for finality and the need to accomplish justice. In her decision, the district court stated the finality concerns were overriding, and therefore categorically denied the Samish the ability to intervene. You saw when we came back in our motion for reconsideration, the Samish tribe presented a proposal to minimize those concerns and fish under the rights of some of the existing tribes, not take its own allocation. And the district court still denied it, saying on the grounds that Samish would be interjecting itself into the original proceeding, which is a necessary result of becoming part to the original case, and it would require reallocation of the rights. So the court was saying any participation in the original case would be too overriding a concern. And so the judge was required to strike that balance, and she didn't do so in this case. She just denied the tribe, and she didn't accord any weight to the finality to the justice concerns in the Samish tribe. You've got about three and a half minutes left. Do you want to reserve it? I do. Thank you. May it please the Court. I am Elizabeth Ann Peterson from the Department of Justice. I will be sharing my time this morning with Daniel Rass, who represents the tribal appellees. The question for this Court today is really not what happened in the course of the Samish tribe's recognition proceedings, but rather whether the outcome in 1996 of those independent proceedings is an extraordinary circumstance that would warrant the vacature of this Court's decision. Well, there were a number of hints along the way that if that were to happen, that might – there would well be grounds to go back and reopen up the proceedings. Hints along the way from the United States alone, Your Honor. By the courts and by our courts. I don't read this Court's decisions that way at all. It appears to me very clear from this Court's two decisions in the Green cases, Green against the United States, and then subsequently Green against Lou Babbitt, that this Court ruled that the decision regarding successorship to the Samish treaty rights had been definitively decided by the courts, which have the capability to do that. Courts are competent to make decisions regarding successorship to the legal rights under treaties. They do not have the authority to determine tribal recognition rights, but those rights and treaty rights have been ruled repeatedly by this Court to be independent. I think it might be a useful illustration here to look at the Supreme Court decision in the United States against John, for example, which is at 437 United States, 634. That's a case in which a group of Indians remained in Mississippi, a group of Choctaw Indians remained in Mississippi after the Choctaw tribe had been removed by treaty from Mississippi, and therefore the treaty tribe, the recognized group, no longer existed in Mississippi, and the law was that those Indians remaining behind were to be assimilated with the residents of Mississippi and were not entitled to the rights and benefits accorded to Indian tribes. But that group remained in Mississippi and remained a tribal structure, remained socially cohesive, and eventually achieved federal recognition and received the rights and benefits attendant upon federal recognition. That did not create a new Choctaw treaty successor. The treaty successor was a separate group that was now in Indian country in Oklahoma. The Mississippi Choctaw Band, nonetheless, is a fully recognized Indian tribe entitled to all of the rights and all of the benefits that are attendant upon federal recognition for the tribe and its members. So I think that illustrates clearly why the two independent decisions, which can intersect, for example, at the point where treaty rights are determined, it is reasonable for the court to consider the fact that the United States has had a continuing government-to-government relationship with a tribe signatory to a treaty to determine that the present day tribe with which it continues to have that government-to-government relationship is the same tribe that signed the treaty. In this case, the court decided the reverse. It decided that the tribe that signed the treaty no longer had a government-to-government relationship with the United States and could no longer have one because it had not retained the necessary social and political cohesiveness. The decision of the Secretary of the Interior is not to the contrary. It decided that a group of Samish Indians, one of probably three or more identifiable groups of Samish Indians after the treaty, had retained sufficient cohesiveness to be considered, in conjunction with members of the historic Noir Ha tribe, as a federally recognized tribe. And it is now a fully recognized Indian tribe and entitled to all of the rights and benefits attendant upon that status. It is not the tribe that signed the treaty. That decision was already made by this court in its 1981 decision, and nothing in the record before the Secretary is contrary to that. Although Samish likes to reiterate that the Secretary has found that it, the present-day Samish tribe, is the legal successor to the treaty signatory Samish, it has never made that finding. There is no finding to that effect in any of the record before the Secretary or in the Federal Register announcement of the tribe's recognition. So there is no reason why the tribe's recognition should now become an extraordinary circumstance that could upset a 20-year-old precedent when the 20-year-old precedent is fully consistent with the Secretary's now determination that the Samish tribe is a federally recognized tribe. What Samish's case boils down to is its belief that had that recognition been in place at the time that it litigated its right to intervene, the court might have made a different decision. There is no reason to believe that except that recognized tribes generally were treated as treaty tribes based on the full historical record. But there is no reason why Samish should get a different treatment now when it put its full historical record before the court, just as did all those other tribes in the original Washington II proceedings. It has not even suggested that there was a defect in that proceeding or that it was unable to present its full historical. Is the evidence which Samish put forward before the BIA in 1996 the same as it put before the district court in the treaty rights case? Essentially the same, Your Honor. I thought I heard counsel say that Samish wasn't allowed to intervene in that case. Samish was not allowed to intervene, but in its intervention case, it did put in its full historical record. That record was considered first by a magistrate, then by a district judge, and then by this court in Washington II. But if it didn't intervene, then it couldn't get any relief. Is that right? It put in the full historical record that was needed, the same historical record that was needed in the recognition proceedings in this court, which was intended in this court to make the separate and independent findings that the Samish tried before it in 1981. So what you're saying is the court considered the evidence and then thought, since it doesn't have an organized structure, we won't allow it to intervene? It concluded that for purposes of treaty successorship, the group before it had not established a continuity of organized tribal structure. In other words, it was not that same tribe that had signed the treaty and had not succeeded to its legal rights. The Secretary's decision was that the tribe in front of it had for a very long time, although the record really doesn't go back much to substantiate this prior to 1900, been a cohesive social group with a political structure sufficient to meet the criteria for tribal recognition, and that therefore its members should be entitled to the benefits of the programs that are in place for it. The Secretary made no determination that the group he was finding to be a tribe was a successor of the group which was alleged to be a treaty participant. Correct, Your Honor. That is the missing finding. That is the finding that Samish repeatedly has inferred from the favorable decision on its recognition petition, but which isn't in there and needn't be. Because, as I suggested by offering the illustration of the John decision in the Supreme Court, a federally recognized tribe needs to have had a political and social structure sufficient to meet the criteria for federal recognition for a long history. But it need not have always been the very same tribe. And even Samish doesn't claim that this tribe was always the same, because it acknowledges that descendants of the Nuaha tribe are members of the current day Samish tribe, and many descendants of the treaty time Samish are not members of the present day Samish tribe. They have joined other tribes or have declined. The only difference is that at the time of Judge Bolt's first decision, that the procedure for gaining federal recognition had not yet been fully established or implemented, and that when the Samish attempted to take advantage of that procedure, the ultimate conclusion of that should be a factor that should be considered in determining whether or not they have treaty rights. It would certainly make more of a difference had the Secretary concluded that this tribe, the tribe petitioning for recognition now, is the Samish tribe that signed the treaty. It didn't. So, in fact, although Samish is correct, recognition had been based on sort of historical dealings, government-to-government relationships that had long existed, that the Interior Department didn't keep special track of. And following the Indian Reorganization Act, it did become critical to know who the groups were that were entitled to the benefits of statutes enacted following that statute and subsequent ones. But it is of no consequence to Samish's treaty rights that there wasn't a process for determining recognition at that time, because there was a full and fair opportunity. Apparently, all of the tribes that were beneficiaries of Bolt's decision, with the exception of several, were federally recognized. I think what Samish has said is that all of the federally recognized ones and a few of the others were adjudicated as treaty tribes. That was on the basis of a full consideration of a factual record over which this Court has held, the courts have the competence to make adjudications. Now, as I understand, all they're seeking to do here is to have an opportunity to revisit those issues with the addition of the federal recognition. And the reason why the district court's conclusion that it had discretion to deny that motion is because they have already presented all their evidence, and the status, as this Court has held, is inconsequential to that determination. So since the two are independent of — No. Independent of. We didn't use those terms. I think marginal effect was what this term — It's inconsequential. They may not be here today. Well, they said — this Court did say it would have at best a marginal influence, and Samish recognizes that. So that opportunity that they're fighting so hard for is to present status which is entitled to no deference under this Court's prior ruling and which could have only marginal effect on treaty rights. And for that reason, the district court was well within its discretion in denying them that opportunity. And I'd like to allow my co-counsel to present this argument. Thank you, Ms. Peterson. May it please the Court. I'm Daniel Rouse. I am the attorney for the Lummi Nation, and I am speaking this morning for — I think it's still morning — for the ten treaty tribes who oppose the Samish reactivation of their case. Before I begin, I'd like to have the Court appreciate that there are a number of representatives from those ten tribes here today, and I'd like them, please, if they would, to raise their hands. Thank you. There are a couple of matters that I would like to clear up before beginning my — the main part of my argument. The first is a question that you raised, Judge Van, as to what the district court held. And Judge Boldt held — and this is at 476 Federal Supplement 1111 — that based on the above findings and fact and conclusion of law, it is hereby adjudged that these intervenor entities, including Samish, do not have and may not confer upon their members fishing rights under the treaties of Point Elliott and Medicine Creek. In other words, they allowed — they were allowed to intervene in the case, and having intervened, the court entered final judgment against them. This court then affirmed that judgment in Washington, too. A second matter that I would like to clear up briefly is that the Samish tribe was — did have intervenor status. At the time, the Swinomish Indian tribal community was adjudicated to be a successor to the treaty tribe Samish. The Swinomish moved to intervene and were allowed to intervene in May and July of 1974. In August of 1974, Samish moved to intervene. The order on intervention was in September of 74, and the court's ruling — hearings and rulings on Swinomish successorship, the hearing was in December of 1974, and the rulings were in December 18th of 74 and February of 1975. So, indeed, the Samish had the opportunity to contest that successorship. What I'd like to do now is point out that the Samish have had — have been treated the same as any of the other non-recognized tribes before Judge Bolt. Those three tribes were the Upper Skagit, the Sauk-Swiatl, and the Stillaguamish, and they were original intervenors in the case. They were at trial before Judge Bolt in 1974. The test used by Judge Bolt then is the same that this court affirmed, the same as this court affirmed in 1981, which was that the group before Judge Bolt had to be properly descended from a treaty-signing entity and show a continuous existence as a tribe. Judge Bolt, after considering the evidence before him, ruled that the Upper Skagit, Sauk-Swiatl, and Stillaguamish all met that standard. When it came time for the Samish and the other tribes to present evidence that they, too, could meet that standard, they had three chances to do that. The first time was before the magistrate, and there was a five days of hearing before Magistrate Cooper, as the district court here has pointed out. And Magistrate Cooper ruled against the Samish and the other tribes. Following that, the Samish were permitted to supplement their record, and indeed they did, and they adduced some 75 or 80 additional exhibits before Judge Bolt. Judge Bolt held a Dane-Elbert trial, and as a result of that trial, Judge Bolt issued his opinion, the conclusion of which I just read, which the entire opinion begins at 476 Federal Supplement 1101. That's the 1979 decision. The five tribes then appealed to this court, and this court issued its opinion in what we have called Washington II. It held that Judge Bolt had initially used the wrong standard for the five tribes, holding that recognition was required. And indeed, this court said that's not the standard. The standard is the same one you enunciated before, dissent from a treaty signed entity, and continuous existence. This court then conducted a Danovo hearing, excuse me, a Danovo review is what this court denominated it, of the record before Judge Bolt, and held that Judge Bolt's conclusions and his findings of the fact regarding the Samish and the other four tribes that they did not meet this standard were not clearly erroneous and were upheld. It's that 1981 decision and Judge Bolt's 1979 record that Samish now wished to supplement. They do that based on their claim that their recognition some 15 years later is an extraordinary circumstance under Rule 60b-6. We submit that is not an extraordinary circumstance. I'd like to speak for a moment about the ---- The extraordinary circumstance to you means something outside the control of the party who is bringing the 60b motion? Outside of the control of the party that the party could have prevented at the original trial. There's no claim here by the Samish that the original trial or the original two hearings and the review by this court were in any way unfair, that they were in any way prevented from introducing as much evidence as they wanted. They were they had counsel. They were properly represented. There's no claim that there was an unfair proceeding. They're saying What they didn't have was the conclusion of the Board of Indian Affairs that they were a recognized tribe, that they had all the information available to them in 1979 that they could present and was presented in 1996. Is that correct? It's my understanding, based on the filings below, Your Honor, that the Samish adduced additional evidence in 1996. But all of that evidence was extant in 1979. Because it had to do with the historical facts. That's correct. I'd like briefly to address the disruption that the permitting the Samish to intervene at this date and present both their treaty claims and their fishing area claims, their usual and custom fishing grounds claims would bring to the United States versus Washington. This is a case that has gone on, as I said, for over 30 years. It has resulted in one Supreme Court case, approximately a dozen or more reported cases from this court. This is the compilation of the original decision and post-trial decisions through 1985 in the district court. And there are several since. The district court, the district court judge who decided the case below, had been the trial court for some almost 15 years when she rendered her decision. And she, from her trial court point of view, said the Samish have not convincingly rebutted, nor could they, the unmistakable conclusion that at this stage, their addition would wreak havoc on hard-won management agreements and plans in this case. In conclusion, Your Honors. I wasn't quite sure. I read that very same sentence, but I wasn't quite. The record is a little thin on just what the havoc would be. Well. I understood it to mean that there would be some disruption in allocation and whatnot. The best example I can give you, I just pay us is that in 1986, a sub proceeding, which is basically a new lawsuit within this in this case was begun by a number of tribes against a number of the tribes. That case denominated sub proceeding 86 dash five dragged on for five or six years. It resulted in innumerable rulings on the in the district court. It resulted in three years of extreme discovery, disrupting the management. And it resulted eventually in four decisions in this court regarding where various tribes could fish and allowed were allowed to fish. The Samish have already indicated that they will raise some of the same issues. Indeed, in their brief, their reply brief on page twenty eight. Note 15. Samish has the summit cryptic read it in isolation, but clear as a bell to those tribes are already involved. Statement to Quamish has developed an extensive urchin fishery within Samish historical territory. Well, Squamish probably has because to Quamish has adjudicated fishing rights within Samish territory. What this statement says to the tribes that are already in the case is if Samish is permitted to intervene and litigate their UNA, we're going to be right back into another who can fish where case, which has been settled thoroughly. If we analogize this to a water rights case, Samish wants to come in and change the water right allocations, which have been settled among the tribes and the state and the United States for some 26 years. It's this kind of interruption that the trial court was talking about. In addition, there are annual annual meetings throughout the year to deal with fisheries management issues. And these are these meetings involve Alaska fisheries, ocean fisheries off Washington. Those meetings would take place regardless. Right. You have another participant. You're three minutes over. They would take place. Your honor. But three minutes over your time. Thank you very much. All right. Rebuttal. Thank you, Your Honor. As we stated in our briefs, the Samish tribe finds it interesting that these the other tribes in the United States are opposing. The Samish tribes attempts to re-argue or re-litigate U.S. v. Washington, but they seem to have no similar preconceptions about re-arguing the green litigation. If you look at green versus United States, and I read through it again, there are 12 separate mentions of the fact that the Samish tribe is pursuing recognition. And in the event that the tribe obtained recognition, the next step was for the tribe to assert its treaty fishing rights back in U.S. v. Washington. It was no surprise. It wasn't inconsequential. The Samish tribe did exactly what the United States asked and this court asked in that 1993 decision. At the time in 1993, there was virtually no chance that the Samish tribe was going to be recognized. The court called it, the district court called it an unlikely and speculative event. Even the district court, the IBIA or the Bureau of Indian Affairs had ruled against the Samish tribe twice, 1982, 1987. But they did it without giving the tribe the opportunity to see the evidence that was being used against them and the opportunity to a full due process hearing. Now, I do want to address the intimation is being made that the Samish tribe had a full and fair opportunity to present all the evidence in the original U.S. v. Washington proceeding. They are separate issues. They involve different evidence. Recognition involves a number of criteria. Treaty status only involves one. But I want to point out to the court an interesting chronology here. What happened is we had the court hearing in October of 1975. Judge Boldt had the de novo hearing. He asked for post-trial briefs, and then he asked the parties to submit findings of fact and conclusions of law. The United States submitted their proposed findings of fact and conclusions of law on March 8, 1976. That's Exhibit 37 to our original motion. Eleven days later, Judge Boldt issued a ruling and order. It's docket number 1966 in which he said, I don't have enough evidence to rule on the issue of treaty status. I would like the parties, and particularly the Samish tribe, the other tribe, to submit additional evidence if they have it. Samish did submit some additional evidence in June and November of that year, but then Judge Boldt signed the findings of fact and conclusions of law that had been prepared even before he issued that order. And, therefore, that order doesn't even incorporate or include the evidence that the Samish tribe submitted after the hearing that the judge asked for. If they'd submitted all the evidence that was in the recognition proceeding, it would have been the same result. Maybe he found it inconsequential. Maybe he did, but we don't know that. He signed those findings of fact without substantive change as the Ninth Circuit ruled. Well, that may be because he didn't consider the evidence that was there after to be credible. But we don't know that. He didn't make any changes in those, signing those findings without changes. No, but the question is, the reasonable inference to be drawn from the act, and you're telling us that the inference to be drawn is that he disregarded that evidence. No, he signed findings that were prepared before then. I know. But Judge Bassett, maybe, you know, compared the findings with the evidence as well really doesn't change anything. That could have been just a reasonable conclusion, isn't it? It's a possible conclusion. But the Court ruled the last point I want to make is that the Ninth Circuit ruled that the Samish tribe has not claimed to be any tribe other than the historical Samish tribe that was a party to the treaty. And the Ninth Circuit said, to the extent the Samish rely upon historical roots, which they did, the roots are probably the same as they posited in Washington, too. We're just asking for the opportunity to litigate that issue. Thank you. Thank you. And we thank all counsel for their argument in this case. The case is now submitted for decision. Being the last case on today's calendar, we'll stand and recess for the day. All rise. The Court now stands in recess. The Court is adjourned.
judges: Tashima, Paez, Bea